708 So.2d 1162 (1998)
Edward Joseph DROBNAK
v.
Karen Burgess DROBNAK.
No. 97 CA 0021.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
*1163 Robert J. Prejeant, Houma, for Plaintiff-Appellee Edward Joseph Drobnak.
Mark D. Chiasson, Thibodaux, for Defendant-Appellant Karen Burgess Drobnak.
Before CARTER and FITZSIMMONS, JJ., and CHIASSON, J. Pro Tem.[1]
FITZSIMMONS, Judge.
Appellant, Karen Burgess Drobnak, and appellee, Edward Joseph Drobnak, were divorced on October 22, 1992. Mrs. Drobnak subsequently remarried. She assumed the last name of her new husband, "Malbrough." Mrs. Malbrough appeals the trial court judgment awarding Mr. Drobnak the sum of $7,675.00 for movables not received after the property settlement agreement and denying Mrs. Drobnak's motion for increase in child support.

FACTUAL BACKGROUND
Mr. Drobnak was employed as an engineer with IBM Technology for twenty-six years. On July 31, 1992, shortly before filing a petition for divorce, Mr. Drobnak elected to accept the early retirement proposal presented by IBM. He did this in lieu of the risk of being laid off without the benefits offered in the retirement package. At that time, he received approximately half of the $82,000 retirement sum from IBM. The retirement contract provided that he could not work for any organization that would be in direct competition with IBM. Additionally, pursuant to the contractual agreement, he would begin to receive retirement benefits from IBM's pension and profit-sharing plan in June, 1996. This sum amounted to approximately $1475.00-$1490.00 per month.
In September or October, 1992, Mr. Drobnak started working for Carsmiths, Inc. (hereinafter referred to as "Carsmiths") as a mechanic trainee. His earnings from Carsmiths, as reflected on his 1994 tax returns, were $6,813.00. On July 28, 1995, Mr. Drobnak moved for a reduction in child support payments. He also sought delivery of certain items awarded to him in the community property settlement. These items had been last in the possession of his former wife.
The trial court granted a reduction in child support payments from $541.00 to $325.00 effective October, 1995. The court further ordered that the rule instituted by Mr. Drobnak be continued without date, but that Mr. Drobnak be permitted to go to his former wife's residence for the purpose of obtaining community property items granted to him in the community property settlement. On June 12, 1996, Mr. Drobnak filed another rule to show cause why his ex-wife should not be ordered to deliver various items awarded to him in the community property settlement, or, alternatively, the value of those items, in the sum of $13,160.00.

CHILD SUPPORT
Mr. Drobnak testified that after retiring as an engineer from IBM Technology, he chose to work as a mechanic at Carsmiths because it was a job that he enjoyed. He *1164 stated that in late 1995[2] he left his job as a mechanic because he anticipated the vesting of his retirement proceeds in June, 1996. Additionally, he had been receiving interest income.[3] Prior to his departure from Carsmiths, his tax returns for 1995 reflected earnings of $7,650. On June 1, 1996, Mr. Drobnak began receiving gross retirement proceeds of $1860.62 per month. He testified that he did not look for work because he wanted to construct a new home. He conceded that there were no physical or mental disabilities that would prevent him from getting an income producing job.
The trial court determined that Mr. Drobnak's earnings as of the time of the hearing were $1900.00 per month. It did not include Mr. Drobnak's potential earnings as a mechanic in its computation of child support. The statutory guidelines for the determination of child support provide that "[i]f a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential...." La. R.S. 9:315.9. The court may deviate from the established guidelines "if their application would not be in the best interest of the child or would be inequitable to the parties." La. R.S. 9:315.1. However, the statute requires that "[t]he court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application...." La. R.S. 9:315.1(B).
In its oral findings, the trial court included only Mr. Drobnak's current income for purposes of computing child support according to the statutory schedule.[4] It failed to hand down any reasons for the deviation from the inclusion of potential income in the equation to determine child support. Our independent review of the record, in an effort to correct this legal error, does not uncover any evidence that would be supportive of a finding that the best interest of the Drobnaks' daughter would be served by a deviation from the guidelines. See La. R.S. 9:315.1(B) and (C). Nor are there extenuating circumstances that would support a determination that compliance with the guidelines would be inequitable to Mr. Drobnak.
There exists, however, sufficient evidence in the record to render a decision. See State on Behalf of Taylor v. Thomas, 93-1039, p. 3 (La.App. 5th Cir. 6/28/94); 639 So.2d 837, 839. (In contrast, cf. Aguilar v. Wilson, 597 So.2d 1186 (La.App. 1st Cir.1992)); and after remand, 607 So.2d 837 (La.App. 1st Cir. 1992)[5]. After reviewing the trial court's findings, we conclude that the trial court erred in its failure to include the annual income that Mr. Drobnak had earned as a mechanic before he voluntarily decided not to work. This financial sum of $7,650.00 (or $637.50 per month) should have been added to the $1900.00 per month figure utilized by the court. The result is a total amount of earnings of $30,450.00 for the 1995 fiscal year, or $2537.50 per month.
For purposes of computing the combined adjusted monthly gross income of Mr. Drobnak and Mrs. Malbrough, it is noted that Mrs. Malbrough earned $260 per month in 1995. The total combined gross income amounts to $2797.50 per month [The schedule's designated sum equals $435.00 per month]. Mr. Drobnak's contribution constitutes 91% of that figure, or $396.00 per month. Therefore, an increase in child support from $325.00 to $396.00 per month is warranted.

*1165 COMMUNITY ASSETS
The law provides that prior to a property settlement, "[a] spouse has a duty to preserve and to manage prudently former community property under [her] control ... in a manner consistent with the mode of use of that property immediately prior to termination of the community regime." La. C.C. art. 2369.3. The spouse alleging improper management (Mr. Drobnak) bears the burden of proving that his spouse failed to prudently preserve and manage the property prior to the partition. See La. C.C. art. 2369.3. Comments (c) (1995).
Following the community property settlement agreement, the dictates of La. C.C. art. 2369.3 and the concomitant spousal duty vis-à-vis the former community property are no longer applicable. A spouse in possession of community property items is not under a duty to possess those items awarded to the other spouse indefinitely beyond the time of the execution of a community property settlement. Moreover, Mr. Drobnak bears the burden of proving the parties' mutual consent to a contract of deposit, or Mrs. Malbrough's failure to return the deposited thing(s). La. C.C. arts. 2932 and 2933; Polk Chevrolet, Inc. v. Webb, 572 So.2d 1112, 1115 (La.App. 1st Cir.1990); writ denied, 575 So.2d 394 (La.1991).
In the instant matter, the community property settlement was confected on August 19, 1994. It is undisputed that shortly after the finalization of the community property settlement, Mr. Drobnak went to the former family home on a Saturday and a Sunday to retrieve movables awarded to him. He stated at trial that he did not obtain all the items because he could not locate them. Additionally, he did not possess the capability to transport everything. Mrs. Malbrough indicated that, at the time of the collection of his movables, she was unaware of Mr. Drobnak's contention that some items were missing. She did recall her ex-husband telling her that he would "return in two weeks to pick up the boat and a few other items...."
On July 28, 1995, Mr. Drobnak filed a rule to obtain permission to return to the residence to retrieve the alleged remaining movables. Mr. Drobnak testified in the instant proceedings that he again did not receive those items in dispute following the court ordered visit in October of 1995. He stated that Mrs. Drobnak not only did not allow him into the house, but that she prevented him from looking under a tarpaulin in the garage to look for the missing items. Mr. Drobnak entered into evidence a video of the garage showing the area where the missing items should have been. Mrs. Malbrough failed to refute Mr. Drobnak's evidence, relying merely on her contention that she did not know what became of the items; she presented no evidence to show what became of the items that were left at the family home, which she alone possessed.
The trial court "believe[d] that Mr. Drobnak's testimony is more credible than that of his former wife." The trial court did not discuss any theories of recovery, but apparently viewed this case as merely an enforcement of the community property settlement. Basing its decision on purely factual findings, it awarded Mr. Drobnak a monetary sum for those portions of the assets it deemed to be adequately described and valued.
Deference is granted by reviewing courts to findings that are based on credibility determinations. In circumstances involving conflict in testimony, "reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). A finding of manifest error by a reviewing court of a credibility determination must essentially determine that "documents or objective evidence so contradict the witness's story or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story...." Rosell, 549 So.2d at 844-845. Neither of these prerequisites exists in the present matter. Because this court is presented with conflicting testimony concerning the missing items, we must accept the lower court's finding that Mr. Drobnak seemed more credible than Mrs. Malbrough in his assertion that he did not find all of his awarded movables at any of the arranged meetings. In light of the conflicting *1166 proof, we cannot say the trial court's credibility call was clearly wrong. Stobart v. State through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993).
Accordingly, the trial court's community property award to Mr. Drobnak of $7,675.00 is affirmed. Child support by Mr. Drobnak is increased from $325.00 to $396.00 per month. All costs of this appeal are assessed equally to Mr. Drobnak and Mrs. Malbrough.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Mr. Drobnak's job as a mechanic was seasonal. During the winter months there was too little work available to remain employed; therefore, he worked for approximately nine months out of the year.
[3] The total interest income for 1995 was $2,189.51.
[4] The Louisiana Child Support Guideline, Schedule of Basic Child Support Obligations is located in La. R.S. 9:315.14.
[5] In Aguilar, the trial court initially failed to give any basis whatsoever for its numerical calculations. In the absence of any guidance as to the trial court's rationale, this court was unable to properly review the judgment to determine whether the court's deviation was an abuse of discretion. On remand, the trial court adopted the reasons espoused in the appellate brief; however, the first circuit remained unable to determine the calculations used to arrive at the trial court's figure. The case was again remanded to the trial court.